United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-10172

RON L. PEGRAM,

Plaintiff-Appellant,

versus

HONEYWELL, INC., HONEYWELL
INTERNATIONAL, and HONEYWELL
INTERNATIONAL, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this employment discrimination case, appellant Ron L. Pegram ("Pegram") appeals the district court's grant of summary judgment in favor of his former employer Honeywell, Inc., ("Honeywell") dismissing Pegram's claims of racial and disability discrimination under 42 U.S.C. § 1981 (2003) and the Texas Commission for Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.002 et. seq. (Vernon 1998). Pegram also challenges the district court's dismissal of his

claims to recover employee benefits for violations under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, as well as the common law theories of breach of contract and promissory estoppel. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant background, drawn in the light most favorable to the plaintiff, is as follows: Pegram, an African-American sales employee, began working at Honeywell in 1991. In August 2000, Pegram was promoted to the position of Total Plant Account Manager ("TPAM"), in the power industry, otherwise known as the Industrial Automation and Control ("IAC") division. As a TPAM, Pegram sold a wide-range of Honeywell products, with Pegram's yearly sales quota in the amount of $3-4 million.

In September 2000, Honeywell geographically reorganized its IAC division's sales territories and reporting relationships. After the reorganization, Pegram reported to David Spencer, the IAC division's Regional Sales Manager, and Guy Grumbles, the Solutions Sales Director for the eastern sales region. In October of 2000, Pegram learned that Grumbles expressed concerns about Pegram's ability to satisfactorily accomplish his tasks as a TPAM. Thereafter, Spencer and Grumbles attempted to persuade Pegram to accept a position as a Service Account Manager ("SAM"). The SAM position offered Pegram a base salary comparable to a TPAM, but with a lower incentive pay.

On December 14, 2000, Pegram aggravated a pre-existing back condition, during an automobile accident, and Honeywell subsequently transferred him to a SAM position.[1] Spencer and

---

[1] Initially, the SAM position occupied by Pegram included small project sales, leading Honeywell to describe Pegram's first IAC TPAM as a "hybrid SAM" position. Shortly after February 1, 2001, Spencer told Pegram that he would be assuming "pure" SAM duties.

2

Grumbles then hired a white male to replace Pegram in the TPAM position. On several occasions Pegram expressed disillusionment in serving as a SAM and an unwillingness to continue in that role. Despite Pegram's desire to continue working as a TPAM, Spencer informed him that there were no available TPAM positions in Pegram's region at the time, and advised Pegram to search for a TPAM position elsewhere in the company.

On March 13, 2001, while in pursuit of other TPAM opportunities, Pegram sent an email to Honeywell officials explaining that he had scheduled back surgery on April 16, 2001, and that he would need short-term disability benefits. The next day, Pegram met with Spencer and a representative of Honeywell's Human Resources Department in Houston to discuss his employment situation. During the Houston meeting, Spencer apprised Pegram that no TPAM positions were currently available, and that unless Pegram was able to secure another position at Honeywell, he would be terminated. Pegram was unable to secure such a position, and was terminated. Thereafter, Pegram applied for, and was denied, any short-term disability benefits from Honeywell.

On April 5, 2001, Pegram filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") alleging employment discrimination based upon race and disability. Upon receipt of this Notice of the Right to Sue fro m the EEOC, Pegram timely filed a complaint in federal court on May 4, 2001. In his complaint, Pegram alleged that Honeywell discriminated against him because of his race in violation of 42 U.S.C. § 1981. He also asserted claims for breach of contract and promissory estoppel under Texas law based upon his claim for short-term disability benefits. On February 7, 2002, Pegram amended the complaint to add claims under the TCHRA for discrimination based upon race and

3

disability, and under section 510 of ERISA for interference with his rights under the short-term disability plan.

On April 30, 2002, Honeywell moved for summary judgment on all of Pegram's claims. After the parties completed briefing, the district court instructed the parties to submit additional briefing and evidence on whether Pegram's reassignment was an "adverse employment action" under the TCHRA and section 1981. On February 5, 2003, the district court granted Honeywell's motion for summary judgment. Regarding Pegram's reassignment, the district court held that the transfer did not constitute an adverse employment action. Pegram timely filed a notice of appeal.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. Evans v. City of Houston, 246 F.3d 344, 347 (5th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citations omitted). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. See Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999).

4

We review the district court's evidentiary rulings for an abuse of discretion. St. Romain v. Industrial Fabrication & Repair Serv., 203 F.3d 376, 381 (5th Cir. 2000).

DISCUSSION

I.      Timeliness of Federal & State Law Claims

Honeywell asserts on appeal, as it did before the district court, that prior to reaching any substantive issues, this court should find Pegram's federal and state law claims untimely. The district court granted Honeywell's motion for summary judgment finding that Pegram's claims under section 1981 were only actionable if they accrued post May 4, 1999, and Pegram's state law claims under TCHRA were actionable only if they occurred after October 7, 2000. We affirm.

We begin our analysis by noting that Pegram filed suit alleging discriminatory acts by Honeywell that occurred between 1993 and 1997 and from the period of October 2000 until March 30, 2001. Pegram filed a charge of discrimination with the TCHR on April 5, 2001, and he initiated this action in federal court on May 4, 2001. Federal civil rights actions brought under section 1981, which lack an express statute of limitations, are governed by the most closely analogous limitations period provided under state law. Johnson v. Railway Express Agency, 421 U.S. 454, 463-66 (1975); Jones v. ALCOA, Inc., 339 F.3d 359, 364 (5th Cir. 2003). Under Texas law,[2] one must file a discrimination claim under section 1981 within two years of the adverse employment action. See Byers v. Dallas Morning News, 209 F.3d 419, 424 (5th Cir. 2000). To state a claim under the TCHRA,[3] a plaintiff must file a charge of discrimination with the EEOC or the TCHR within 180 days

[2] The two-year limitations period proscribed by Tex.Rev.Civ.Stat. art. 5526 applies to section 1981 claims.

[3] Section 21.055 of the TCHRA provides:

of the discriminatory act.  Tex. Lab. Code. Ann. § 21.202(a); see also Estate of Martineau v. ARCO

Chem. Co., 203 F.3d 904, 913-14 (5th Cir. 2000).  Thus, the district court correctly ruled that

Pegram's section 1981 claims arising prior to May 4, 1999 (two years before Pegram filed the federal

complaint) were time-barred.  Likewise, any state-law claims occurring before October 7, 2000, (180

days before Pegram filed with TCHR) were also time-barred.

## A.    Continuing Violations Doctrine

Pegram attempts to avoid this apparent untimeliness by invoking the continuing violations

doctrine.  Specifically, Pegram contends that the district court erred in dismissing his section 1981

and state law claims because Honeywell's alleged discriminatory acts, relating to Pegram's race

and/or disability, constituted a pattern of discriminatory behavior.  We cannot agree.

This court has consistently held that the continuing violations doctrine is equitable in nature

and extends the limitations period on otherwise time barred claims only when the unlawful

employment practice manifests itself over time, rather than as a series of discrete acts.  Frank v.

Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003); see also Huckabay v. Moore, 142 F.3d 233, 238-39

(5th Cir. 1998).  Under the continuing violations doctrine, a plaintiff is relieved of establishing that

all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can

---

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

(1) opposes a discriminatory practice;
(2) makes or files a charge;
(3) files a complaint; or
(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Lab. Code Ann. § 21.055 (Vernon 1998).

6

show a series of related acts, one or more of which falls within the limitations period. Felton v. Polles, 315 F.3d 470, 487 (5th Cir. 2002) (citing Messer v. Meno, 130 F.3d 130, 135 (5th Cir. 1997). The end goal of the continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." Celestine v. Petroleos De Venezuela SA, 266 F.3d 343, 352 (5th Cir. 2001); see also Hardin v. S.C. Johnson & Son Inc., 167 F.3d 340, 344 (7th Cir. 1999).

The Supreme Court recently clarified the limits of the continuing violations doctrine. In Nat.'l R.R. Passenger Corp. v. Morgan, the Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. 536 U.S. 101, 113 (2002). Thus, each discriminatory act starts a new clock for filing charges alleging that act. Id. In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment. Noting that repeated conduct constitutes a part of the nature of hostile environment claims, the Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." Id. Therefore, Morgan makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period. With these principles in mind, we begin analyzing Pegram's claims of employment discrimination.

1.    Section 1981 claims occurring prior to May 4, 1999

The continuing violations doctrine does not apply to Pegram's federal claims under section 1981.[4] The sole discriminatory acts alleged by Pegram, that the district court found untimely, were the denial on account of race of (1) training opportunities; (2) the approval to participate in Honeywell's MBA program; and (3) interaction with clients. After Morgan, a one-time employment event, including the failure to hire, promote, or train, and likewise dismissals and demotions, is a discrete action that "constitutes a separate actionable 'unlawful employment practice,'" and therefore, should place an employee on notice that a cause of action has accrued. Morgan, 536 U.S. at 114. Under Morgan, discrete acts such as failure to train and refused admission to an MBA program, which are separately actionable, may not be pursued outside the relevant limitations period.[5] Here, Pegram only alleges discrete acts of race discrimination which were all untimely under section 1981's limitation period of two years. The timeliness of Pegram's claims based on his SAM reassignment and the termination of his employment do not salvage his untimely claims. Nor does Pegram

_____

[4] The Civil Rights Act of 1866 [42 U.S.C. § 1981] prohibits discrimination on the basis of race. The relevant provision of section 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licences, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (2003).

[5] This court has not expressly ruled on whether client access constitutes a discrete act. We note however, that the Court in Morgan did not limit discrete acts solely to termination, failure to promote, denial of transfer, or refusal to hire. The Court stated that the aforementioned were merely "easy to identify" as discrete acts. Morgan, 536 U.S. at 114. Therefore, while stating no opinion on whether client access is a "discrete act", on these facts, we defer to the judgment of the district court.

8

expressly assert that the cumulative effect of these isolated instances created a hostile work environment claim cognizable under either the TCHRA charge or the EEOC charge. Thus the district court correctly ruled that the continuing violations doctrine does not provide shelter to Pegram's claims of discrete acts of racial discrimination prior to May 4, 1999.

       2.      TCHRA claims occurring prior to October 7, 2000

Pegram also argues that the district court erred in finding that time-barred TCHRA claims, unlike section 1981 claims, may not be revived through the continuing violations doctrine. When applying the TCHRA, we consider the analogous federal provisions contained in 42 U.S.C. § 2000e (2003) ("Title VII").[6] <u>Martineau</u>, 203 F.3d at 912 (<u>citing</u> <u>Leatherwood v. Houston Post Co.</u>, 59 F.3d 533, 536 n.5 (5th Cir. 1995). To state a claim under the TCHRA, a plaintiff must file a charge of discrimination with the EEOC or the TCHR within 180 days after the alleged unlawful employment action. <u>Id</u>. Parallel to the corollary federal provisions in Title VII, the TCHRA limitations period has been construed as "mandatory and jurisdictional" under Texas law. <u>Specialty Retailers, Inc. v. DeMoranville</u>, 933 S.W.2d 490, 492 (Tex. 1996); <u>see</u> <u>also</u> <u>Nilsen v. Moss Point</u>, 621 F.2d 117, 120 (5th Cir. 1980) (stating that Title VII has a "mandatory and jurisdictional" requirement that civil actions be commenced within a 90 day period).

---

[6] Section 2000e-2(a) of Title VII states in relevant part:

 It shall be an unlawful employment practice for an employer—

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

 42 U.S.C. § 2000e-2(a)(1) (1994).

Although Pegram appeals the denial of his time-barred state law claims, we note that the plaintiff's initial brief did not substantively address the district court's decision on this precise issue. Pegram's initial brief only raises the issues of Honeywell (1) having racially discriminatory policies, (2) denying him interface with clients and training opportunities, and (3) questioning his abilities. The first issue Pegram raises clearly does not connote disability discrimination. The record shows that the latter two issues occurred prior to Honeywell officials' awareness of Pegram's back-related injury, thus, we construe these issues as claims of discrimination on the grounds of race rather than disability. Therefore, this claim is not properly before this court, as it has been waived. See Webb v. Investacorp, Inc., 89 F.3d 252, 257 n.2 (5th Cir. 1996) (holding that an appellant waives all issues not raised and argued in his initial brief on appeal). In any event, even assuming the continuing violations doctrine applies to Pegram's TCHRA claims, such claims are time-barred on these facts, because Pegram's state law claims set forth the same allegations as his federal claims.

II.     Adverse Employment Action Under Section 1981

The district court granted summary judgment in favor of Honeywell on the grounds that Pegram did not satisfy his burden of proof in establishing race discrimination under section 1981. We reverse the district court on this issue.

To survive a summary judgment motion on his section 1981 claim, Pegram must establish, by a preponderance of the evidence, a prima facie case of intentional discrimination. Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). To establish an inference of discrimination, consistent with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973),[7]

---

[7] We have previously held that race discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII. See Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000); Byers, 209 F.3d at 422 n.1;

10

a plaintiff must show a prima facie case by establishing that the (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position; (3) plaintiff suffered an adverse employment action, and (4) plaintiff was replaced with a person who is not a member of the protected class. Bauer v. Albermarle Corp., 169 F.3d 962, 966 (5th Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802). After a prima facie case is made, the defendant must articulate a non-discriminatory reason for its actions. Martineau, 203 F.3d at 912. If this is done, the plaintiff must then prove (1) that the defendant's proffered reasons were false, and (2) that the real reason for his discharge was because he was a member of a protected class. Id.

Our court has a strict interpretation of the adverse employment element of Pegram's prima facie intentional discrimination case. Under Title VII principles, which inform our treatment of section 1981 claims, an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (quoting Hunt v. Rapides Health Care Sys., LLC, 277 F.3d 757, 769 (5th Cir. 2001)). Rather, an adverse employment action consists of "*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." Felton v. Polles, 315 F.3d

LaPierre, 86 F.3d at 448 n.2.

11

470, 486 (5th Cir. 2002) (emphasis added).[8]  A demotion also qualifies as an ultimate employment decision under Title VII.  Sharp v. City of Houston, 164 F.3d 923, 933 n.21 (5th Cir. 1999).

The district court held that Pegram did not suffer an adverse employment action upon his transfer from the TPAM position to the SAM position.  In arriving at this conclusion, the district court focused on the incentive compensation to determine whether the transfer was an adverse employment action.  Comparing the TPAM and SAM 2001 incentive compensation plans, the district court found the two plans to be the same, and thus held that the reassignment was a lateral transfer rather than an adverse action.  Moreover, the court found that the only other evidence Pegram offered was his own subjective belief that he would lose commission as a SAM.  Thus, the district court found that Pegram could not raise a fact issue as to whether under the SAM incentive plan Pegram would earn less than he would as a TPAM.

Pegram contends that the district court's grant of summary judgment in Honeywell's favor was erroneous.  Pegram alleges that he suffered two adverse employment actions:  first, upon his termination, and second, upon his transfer from the TPAM to the SAM position.  We address each issue in turn.

A.    Termination Claim

---

[8] We recognize Pegram's and the EEOC's contention that in the aftermath of the Supreme Court's decisions in Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Industries v. Ellerth, 524 U.S. 742 (1998), it is an open question in this court whether, and to what extent, those decisions, "lower the bar" for what comprises an "ultimate employment decision."  On these facts, we need not evaluate whether the "ultimate employment decision" doctrine is undermined by the aforementioned decisions because this court has previously held that *even a discriminatory reassignment* with a major change in compensation, duties, and responsibilities would constitute an ultimate employment action.  Hunt, 277 F.3d at 770 (emphasis added).

Pegram claims, pursuant to section 1981, that he was unlawfully terminated on account of his race. Without expressing an opinion on the ultimate merits of his discrimination claim, we hold that the district court erred as a matter of law by not addressing whether Honeywell's termination of Pegram constitutes an adverse employment action.[9] Even under this court's stringent "ultimate employment action" standard, it is beyond dispute that a termination constitutes an adverse action. Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001) (holding that ultimate employment decisions include discharges); Mattern v Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997) (holding that ultimate employment decisions include *inter alia* terminations or discharges). Neither party disputes that Honeywell terminated Pegram. The district court's Memorandum Order, however, is devoid of any reference to Pegram's claim of adverse employment based on termination. Because the district court did not address the merits of Pegram's termination claim and specifically did not evaluate whether Pegram had presented direct or indirect evidence of termination, we find that the district court erred in dismissing Pegram's section 1981 claim without analysis or discussion.[10]

## B. Transfer Claim

1. "Unwanted Transfer" Claim

---

[9] The district court's opinion suggests that the sole discrimination claim, at the trial level, was the transfer. Under this court's precedent, the termination claim would be foreclosed on appeal if Pegram did not raise it at the trial level. See Perez v. Region 20 Educ. Center Serv., 307 F.3d 318, 331-32 (5th Cir. 2002). Following a review of the complaint and summary judgement briefs, however, we find that Pegram established a claim based upon his termination before the district court. Therefore, Pegram's termination claim is not waived.

[10] On remand, we are confident that in addressing Pegram's termination claim, the district court will fully apply the complete McDonnell Douglas analysis to all of the parties competing claims.

Pegram argues that a genuine issue of material fact exists as to whether his reassignment from a TPAM to a SAM position constituted an "unwanted transfer" because a SAM merely plays a supporting role to a TPAM.[11] Under this view, a mere subjective standard would suffice to constitute an adverse employment action. This argument has no merit. We have previously held, as a matter of law, that under Title VII principles, an employment transfer may qualify as an "adverse employment action" if the change makes the job "objectively worse." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 770 (5th Cir. 2001); see also Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999) (stating that a plaintiff's subjective preference is irrelevant under Title VII; the proper standard is an objective one). We also note that other circuits have similarly interpreted an adverse employment action under an objective standard. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002) (Stating that "[w]hether an employment action is 'adverse' — and therefore actionable under Title VII — is gauged by an objective standard"); Cullom v. Brown, 209 F.3d 1035, 1041 (7th Cir. 2000) ("[t]he adversity of an employment action is judged objectively"); Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998) (noting that the determination of whether an employee has suffered an adverse employment action is to be made using an objective standard).

Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action. See Serna v. City of San Antonio, 244 F.3d 479, 485 (5th

---

[11] We note that, as pertains to the reassignment issue, Pegram and the EEOC make other claims as well. After fully considering the merits, and the applicable law, we reject Pegram's and the EEOC's other reassignment arguments as without merit.

14

Cir. 2001). On these facts, Pegram's claim that his reassignment from a TPAM to a SAM was a less prestigious or desirable transfer, without more, would not lift him over the hurdle of summary judgment for the purpose of an adverse employment action.

2.      Incentive Pay claim

Pegram does, however, assert more than the mere loss of subjective prestige. Pegram also contends that a genuine issue of material fact exists as to whether his reassignment was a demotion because TPAMs accrue a higher incentive compensation than SAMs. In order to overcome summary judgment, Pegram must show more than a mere lateral transfer; he must present sufficient evidence that the transfer equated to a "shift change that involves changes in duties or compensation or can objectively be characterized as a demotion." Hunt, 277 F.3d at 770. We find that Pegram has met this standard.

The summary judgment record shows that Honeywell's two sales positions are not the same, primarily because TPAM's and SAM's sell different items, and consequentially the opportunity for a higher earning potential exists solely in a TPAM position. A TPAM generates new business by selling Honeywell's core product, and thus, depending on the relative success of the TPAM, presumably has the potential to earn a considerable amount of incentive pay. In contrast, a SAM generally renews existing service contracts of Honeywell client base, and thus, the SAM's potential to earn significant amounts of incentive compensation therefore appears limited in comparison to a TPAM. Because the record reflects that TPAMs have a higher potential incentive pay than a SAM, a reasonable trier of fact could find the total compensation for the two positions unequal.

Moreover, under the 2001 commission structure endorsed by the district court, the method of calculating incentive compensation for these two positions varied depending on the item sold. In

15

general, the record shows that a TPAM, relative to a SAM, would earn a higher percentage commission on an order. Thus, on these facts, a reasonable trier of fact could find that the incentive compensation packages for the two positions were not equal.

Due to the different incentive pay structures within the 2001 compensation plan, we find a genuine issue of material fact exists as to whether Pegram's transfer from a TPAM to a SAM created a demotion sufficient to constitute an adverse employment action.[12]  Therefore, we hold that the district court erred in deciding that Pegram failed to make a prima facie showing of race discrimination under section 1981.

In the alternative, Honeywell contends that even if Pegram sufficiently made a prima facie showing of racial discrimination, Honeywell was able to fulfill its burden of production on the second step of McDonnell Douglas.  Specifically, Honeywell alleges hat Pegram's transfer to the SAM position was done to ensure that Pegram met his service sales quota due to his inexperience as a TPAM.  Under the McDonnell Douglas analysis, however, this argument is not dispositive if a triable issue of fact exists with regards to whether the alleged legitimate, nondiscriminatory reason is merely a pretext for discrimination.  Sandstad v. CB Richard Ellis, 309 F.3d 893, 897 (5th Cir. 2002) (stating that a plaintiff can survive summary judgement, following an employer's articulation of a legitimate, nondiscriminatory rationale, only "by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation").

_____

[12] This is not to say that any lateral transfer that has a "minor and indirect effect" on one's compensation is sufficient to transform a lateral transfer into a demotion.  See Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) (where commission income was only a small fraction of total income, there was no triable issue of an adverse employment action).  As the Seventh Circuit noted, however, either a cut in a salesman's base pay not otherwise offset upon transfer, or a not-otherwise-offset cut in the commission rate where a commission is a significant source of compensation, would be an adverse action.

16

In the instant action, we find that several of Pegram's allegations in this case raise a question of fact as to whether the reasons Honeywell adduced for transferring him were merely pretextual. First, Pegram had prior experience selling Honeywell's core product. Second, while serving as a TPAM, Pegram excelled in the position and exceeded his sales quota by more than double. Third, while Honeywell claimed Pegram was transferred for lack of TPAM experience, Spencer then replaced Pegram with Billy Dodd, a white employee, who lacked any TPAM experience. Based on the cumulative weight of this evidence, Pegram has met his burden at the summary judgment stage.

III.    Motion to Strike Exhibit & Testimony

Pegram argues that the district court erred in finding the 2001 compensation plan relevant, and therefore admissible, because the aforementioned plan was not in effect when Pegram was transferred in December 2000. The district court denied Pegram's motion on the grounds that whether the incentive pay was objectively better for TPAMs than SAMs, the 2001 commission plan best determines the incentive structure in effect had Pegram accepted the transfer and remained employed as a SAM. Pegram also contends that the district court erred in allowing Pickering's declaration, as Honeywell's corporate designee, into evidence because Pickering was not listed as a person with knowledge of relevant facts prior to the discovery cut-off. The district court denied Pegram's motion to strike finding that because Honeywell did not raise a defense on the lack of an adverse employment action until the district court ordered briefing on the issue, Honeywell lacked any knowledge that they would in fact need Pickering's testimony. The district court also found that Pegram did not seek to take Pickering's testimony prior to his summary judgment deadline nor did Pegram ask for an extension of his response deadline to enable him to take the deposition of Pickering. We affirm the district court.

17

Pegram cites no authority in support of either argument, other than his disagreement with the district court's decision. Further, we find that the district court's decision to consider additional evidence was not an abuse of discretion. See Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995) ("The admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."). Pegram has not challenged the admissibility of the evidence at issue — only the court's decision to consider it. Thus, Pegram's challenge should be rejected.

IV.     Disability Claim under the TCHRA

The district court granted summary judgment in favor of Honeywell with regard to Pegram's disability claim under the TCHRA. The district court found that Pegram did not suffer from a disability protected by the TCHRA. Under the TCHRA, which parallels the language of the Americans with Disabilities Act ("ADA"),[13] 42 U.S.C. § 12112(a), a person is disabled if he or she "either (1) is actually disabled, (2) is regarded as being disabled, or (3) has a record of being disabled." Dupre v. Charter Behaviorial Health Sys., 242 F.3d 610, 613 (5th Cir. 2001). The ADA and the TCHRA define the term "disability" as "a mental or physical impairment [which] must substantially limit an individual's ability to perform at least one major life activity." Waldrip v. General Elec. Co., 325 F.3d 652, 655 (5th Cir. 2003) (stating that the substantial-limitation requirement is the "linchpin" of the ADA's definition of "disability."). The EEOC has promulgated rules establishing that whether an impairment is substantially limiting depends upon "its nature and

---

[13] We have previously held that the TCHRA claim is analogous to the ADA claim, and generally would be treated similarly. Talk v. Delta Airlines, Inc., 165 F.3d 1021 (5th Cir. 1999). For the purposes of analyzing this claim, we will address the TCHRA claims as analogous to their parallel provisions under the ADA.

18

severity, its duration or expected duration, and its permanent or expected permanent or long-term impact." Dupre 242 F.3d at 614.

Pegram argues that he is "disabled" under the TCHRA because he suffers from a degenerative disk disease. Due to his back condition, Pegram contends that he is impaired in climbing stairs, walking, standing for longer than five minutes, sitting for longer than five minutes, with balance, and pain. Honeywell concedes that Pegram suffers from an "impairment" as defined under the TCHRA. Honeywell, however, counters that Pegram's "impairment" did not interfere with his ability to perform at least one major life activity, and therefore is not legally redressable. We agree with Honeywell.

To recover as a "disability" under TCHRA, a "plaintiff must prove a substantial limit with specific evidence that his particular impairment substantially limits his particular major life activity." Waldrip, 325 F.3d at 652 (emphasis in original); see also Kapche v. City of San Antonio, 304 F.3d 493, 497 (5th Cir. 2002) (stating that whether a person has a "disability" that substantially limits major life activities "is an individualized inquiry"). Here, it is undisputed that Pegram worked at Honeywell up until the date of his termination. As to Pegram's condition during his employment, he admits that he obtained not a single absence from work as a result of the back injury. Indeed, the record shows that Pegram's ability to sit or stand for hours at a time while working clearly denotes that the "condition, manner, or duration" under which he was able to perform his office tasks suffered no significant restriction as compared with the average person. See Dupre, 242 F.3d at 614 (upholding a grant of summary judgment in favor of the defendant employer where an employee's inability to sit or stand in one place for more than one hour because of a back condition was not a substantial limitation in the major life activities of standing and sitting to establish a "disability" under

19

the ADA). Pegram has offered no evidence showing that prior to the termination of his employment with Honeywell, his impairment substantially limited either his ability to work or perform other major life activities. Hence, Pegram's conclusory allegations are insufficient to withstand summary judgment.

Nonetheless, Pegram argues in the alternative that even if he was not "disabled," he was "regarded as" being disabled by Honeywell. Specifically, Pegram alleges that Honeywell viewed him as disabled in that he was demoted after informing management of his back injury and subsequently terminated after informing the company he needed disability leave. We cannot agree.

Under the ADA and TCHRA, an individual who is not in fact disabled may have a viable claim that he was "regarded as" disabled if the employer mistakenly believes that: (1) the individual has a physical impairment that is substantially limiting; or (2) an actual, but not-limiting impairment is substantially limiting. See Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999). In order to recover under either prong, the plaintiff must show that an employer believes "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Id.

We find the district court's analysis correct. Pegram clearly does not fall under the first prong of Sutton (i.e. has no impairment at all but is regarded by the employer as having a substantially limiting impairment) because it is undisputed that Pegram's back injury was indeed an impairment.

With regards to the second prong, (i.e. has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment), to survive summary judgment, an employee must show that an employer regarded the employee as substantially limited in his ability to work by finding that the employee's impairment forecloses his ability to

20

perform a class of jobs or a broad range of jobs. Id.; Pryor v. Trane, 138 F.3d 1024, 1027 (5th Cir. 1998) (stating that even "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"). Here, the record shows no evidence upon which a reasonable trier of fact could conclude that Honeywell perceived or treated Pegram's condition as being substantially limiting. Pegram's allegations that Spencer expressed his belief that Pegram could not "handle" the TPAM job are not sufficient to defeat a motion for summary judgment. This court has held that an employer's "belie[fs] that [an employee] is incapable of performing a particular job," without more, is insufficient to establish an impairment that substantially limits the employee's ability to work. Foreman v. Babcock v. Wilcox, 117 F.3d 800, 806 (5th Cir. 1997). Nor does the record show any evidence from which a reasonable trier of fact could find that Pegram's back injury foreclosed him from performing the SAM and TPAM positions at Honeywell. Thus, the district court did not err in granting summary judgment to Honeywell on Pegram's disability discrimination claim.

VI.      ERISA Claim for Short-Term Disability Benefits

Pegram argues that Honeywell violated section 510 of ERISA, 29 U.S.C. § 1140, by interfering or attempting to interfere with his rights to ERISA-governed benefits and by allegedly discharging him for exercising his rights under an ERISA-governed plan. The district court found that Pegram failed to challenge Honeywell's assertion that the plan at issue (i.e. Honeywell's short-term disability plan) is not an ERISA-governed plan, and therefore Pegram cannot assert a section 510 claim against Honeywell. We generally refuse to consider arguments not raised in the district court unless it is a pure question of law and our refusal to consider the question will result in a

miscarriage of justice. <u>Reickenbacker v. Foster</u>, 274 F.3d 974, 983 (5th Cir. 2001). Finding neither of these exceptions applicable, we therefore decline to reach this issue.

VII.     <u>Texas State-Law Breach of Contract & Promissory Estoppel Claims</u>

Finally, we turn to considering Pegram's claims under the theories of breach of contract and promissory estoppel. Pegram argues that he is entitled to recover the health insurance and disability benefits he did not receive through these claims.

Under Texas law, a plaintiff alleging a breach of contract must establish (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. <u>Runge v. Raytheon E-Systems, Inc.</u>, 57 S.W.3d 562, 565 (Tex. App. — Waco [10th Dist.] 2001). Here, because the parties do not dispute that the coverage ended upon termination, the district court correctly ruled that Honeywell did not breach its contract with Pegram. Thus, the breach of contract claim was properly rejected.

We also find that the district court correctly rejected Pegram's promissory estoppel claim. Pegram claims he relied upon Honeywell's promise that he would receive insurance coverage. Under Texas law, a plaintiff alleging promissory estoppel must establish (1) a promise; (2) forseeability reliance thereon by the promisor; (3) substantial reliance thereon by the promisee. <u>English v. Fischer</u>, 660 S.W.2d 521, 524 (Tex. 1993). We find that the district correctly ruled that Honeywell did not promise Pegram that he would receive disability and medical benefits after his termination. Again, only current employees were eligible for these plans. Hence, the district court's decision should be affirmed on this point.

CONCLUSION

22

For the foregoing reasons, we affirm the district court's order insofar as the district court grants summary judgment in favor of Honeywell on the timeliness of the state law claims, motion to strike, the disability discrimination under the TCHRA, the ERISA claim, and the state law breach of contract and promissory estoppel claims. However, we reverse the district court's order insofar as the district court granted summary judgment for Honeywell on Pegram's adverse employment claims, and we remand this matter to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.