United States Court of Appeals
**Fifth Circuit**

**F I L E D**

**February 28, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-11034
Summary Calendar

_____

DOYLE A. PETERSON,

Petitioner - Appellant,

versus

CITY OF DALLAS, doing business as WRR Classical, 101.1 FM,
a Political Subdivision,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(No. 3:03-CV-75-M)

_____

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Doyle A. Peterson appeals the district court's summary judgment

dismissal of his age discrimination claim against his former employer, WRR, a classical

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

radio station owned by the City of Dallas. Because Peterson cannot show that he suffered an adverse employment action, we affirm the district court's holding that Peterson failed to make out a prima facie case of age discrimination.

## I. FACTS AND PROCEEDINGS

In March 1997, at the age of fifty-eight, Peterson was hired as the General Sales Manager of WRR. He supervised eight sales representative positions and a sales assistant. Peterson's compensation included a salary plus four percent commission on 1) the gross sales generated by the sales representatives, 2) sales generated by Allied Radio Partners, an organization that marketed WRR advertising to national markets, and 3) house accounts that Peterson worked on directly. In 2001, WRR divided its sales department into local and national divisions to increase focus on its national sales. As part of this new structure, the position of National Sales Manager was created. The National Sales Manager position involved being responsible for sales beyond the local market and working closely with Allied Radio Partners. Peterson did not apply for the National Sales Manager position.

As a result of WRR's reorganization, Peterson was reclassified as the Local Sales Manager. He still supervised the same eight sales positions and received the same salary and commission rate. However, Peterson no longer oversaw national accounts, either directly as house accounts or through his sales representatives. Peterson filed a grievance with the City of Dallas contending that he had been demoted. The grievance was denied and Peterson resigned on June 11, 2002. In December 2002, Peterson filed an age discrimination employment suit against the City of Dallas under the Age Discrimination

2

in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE ANN. § 21.001 et seq. After the case was removed to federal district court, the City of Dallas filed a motion for summary judgment, which the court granted on July 29, 2004. Peterson filed a timely notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's summary judgment dismissal of Peterson's claims de novo. Gibson v. U.S. Postal Serv., 380 F.3d 886, 888 (5th Cir. 2004). Summary judgment is appropriate only when, "viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is 'no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003) (quoting FED. R. CIV. P. 56(c)).

## III. DISCUSSION

Peterson argues that the district court erred in granting summary judgment because Peterson established a prima facie case of employment discrimination. Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). ADEA cases are typically bifurcated into two distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age discrimination, and those in which the plaintiff relies upon purely circumstantial evidence. See, e.g., Sandstad

3

v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002). Plaintiffs presenting direct evidence of age discrimination may proceed under the "mixed-motive" analysis set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Plaintiffs producing only circumstantial evidence must negotiate the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792 (1973). Peterson proceeds under this latter approach.

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was a member of a protected class—those persons over the age of forty; (2) he was qualified for the position that he held; (3) he suffered an adverse employment action; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004) (citations and internal quotation marks omitted); see also Brown v. CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to provide a legitimate nondiscriminatory reason for its employment action. See, e.g., Tyler v. Union Oil Co. of Cal., 304 F.3d 379, 395 (5th Cir. 2002). If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination. Id.

Thus, to establish a prima facie case of age discrimination, Peterson must show that

he is over forty, that he was qualified for General Sales Manager position, that he suffered an adverse employment action, and that he was replaced by someone younger or treated less favorably than similarly situated younger employees. While it is uncontested that Peterson is a member of a protected class, Peterson and the City of Dallas dispute the remaining requirements of a prima facie case.

Because we conclude that Peterson fails to show that he experienced an adverse employment action, we need not discuss the other factors. Peterson contends that he suffered an adverse employment action both by being demoted and constructively discharged. As evidence of his demotion, Peterson points to his loss of national and house accounts, which deprived him of compensation generators. Peterson states that his income as the Local Sales Manager was thirty-five to forty percent lower than General Sales Manager income.

To establish a demotion, an employee must show a loss in duties, benefits, or compensation. Pegram v. Honeywell, Inc., 361 F.3d 272, 278 (5th Cir. 2004). A reassignment from a prestigious to a less desirable position is insufficient to establish an adverse employment action. Id.; Serna v. City of San Antonio, 244 F.3d 479, 485 (5th Cir. 2001). The City of Dallas concedes that Peterson lost some responsibilities when forced to give up his national accounts as the Local Sales Manager. However, his job position remained otherwise unchanged: he continued supervising the nine sales positions, reporting to his same supervisor, and receiving the same base salary and four percent override commission on his sales representatives' gross revenue.

5

Peterson does not convincingly show that his loss of accounts rendered his reassignment as the Local Sales Manager a demotion. More specifically, Peterson does not show that he had fewer potential accounts or compensation opportunities in his new position. Although Peterson alleges that his income decreased by thirty-five to forty percent after assuming the Local Sales Manager Position, this large decrease was not a result of his reassignment. He retained the same number of sales representatives to generate revenue and received the same commission from their accounts. Peterson concedes that he failed to fill all of his sales representative positions. Contrary to Peterson's assertion, the loss of the national accounts did not significantly reduce his compensation opportunities: Peterson admits that eighty-four percent of WRR's revenue generating sales occur in local markets and that local accounts are more profitable than national accounts.

A "minor and indirect effect" on an employee's compensation does not render a lateral transfer a demotion. Pegram, 361 F.3d at 284 n.12. Although Peterson experienced a significant decrease in compensation, he has not shown that his new position had more than a "minor or indirect" impact. Unlike in cases such as Stephens v. C.I.T. Group/Equipment Fin., Inc., on which Peterson relies, WRR did not directly cut Peterson's salary. 955 F.2d 1023, 1027–28 (5th Cir. 1992). Even viewing all inferences in Peterson's favor, Peterson has not shown that focusing exclusively on local accounts amounts to a demotion.

After concluding that Peterson was not demoted, we easily find that he was not

constructively discharged. Constructive discharge occurs if an "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." Jurgens v. EEOC, 903 F.2d 386, 390 (5th Cir. 1990) (citation omitted). To determine whether a reasonable employee would feel compelled to resign, we consider the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (citations omitted and second alteration in original). Peterson contends that the first three factors are present in this case. As previously discussed, we find that Peterson's reassignment did not amount to a demotion, his salary was not reduced, and his job responsibilities were not significantly reduced. Unable to prove the existence of any of the relevant factors, Peterson has not shown that he was constructively discharged.

IV. CONCLUSION

Because Peterson has not shown that he suffered an adverse employment action, the district court's opinion is AFFIRMED.