JERRY E. SMITH, Circuit Judge,
dissenting:
Plaintiff Allen Thompson failed to plead facts sufficient to meet our circuit’s requirement of an “ultimate” employment action. I therefore respectfully dissent.
*507 I.
Under 42 U.S.C. § 2000e-2(a)(l), it is unlawful for an employer “to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race.If there is no direct evidence of discriminatory intent, a plaintiff may establish his disparate-treatment claim indirectly.[1] That is done through the McDonnell Douglas burden-shifting framework under which a prima facie case of discrimination is established by showing that the plaintiff (i) belongs to a protected class; (ii) is qualified for the position at issue; (in) was subject to an adverse employment action; and (iv) was treated less favorably than other similarly situated employees outside of his class.[2] Because the McDonnell Douglas framework is merely an evi-dentiary standard, however, courts may require neither that the McDonnell Douglas prima facie case be adequately pleaded [3] nor that jury instructions be framed in their terms.[4]
Thompson posits that the district court erred in dismissing his claim for failure to plead an adverse employment action, reasoning that it is an element of the McDonnell Douglas prima facie case and therefore need not be pleaded. That theory, however, is based on a misunderstanding of the role of adverse employment actions in disparate-impact claims. The district court did not err in considering whether an adverse employment action was properly pleaded, because it is not merely an element of a prima facie case using the indirect method of McDonnell Douglas burden-shifting; to the contrary, it is an essential element of the underlying claim of disparate treatment under Title YII.
Although the Supreme Court in Swier-kiewicz held that a plaintiff need not plead the prima facie elements of the McDonnell Douglas framework in order to withstand a Rule 12(b)(6) motion to dismiss, it did so “on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that Swierkiewicz *508 allege ‘specific facts’ beyond those necessary to state his claim and the grounds showing entitlement to relief.”[5] In other words, given that the plaintiff could prove discriminatory intent using direct evidence, requiring him to plead facts sufficient to show all elements of a prima facie case under the indirect method would require him “to plead more facts than he may ultimately need to prove to succeed on the merits.” Swierkiewicz, 534 U.S. at 511-12, 122 S.Ct. 992. Although that heightened standard was erroneous, the plaintiff was still required to meet the general standard: to plead “enough facts to state a claim to relief that is plausible on its face.” Twombly, 550 U.S. at 544, 127 S.Ct. 1955. Therefore, it was enough in Swierkiewicz for the plaintiff to allege that he was terminated in violation of Title VII on the account of his national origin, providing relevant details of events leading up to his termination, relevant dates, and the nationalities of at least some of the relevant individuals. See Swierkiewicz, 534 U.S. at 514,122 S.Ct. 992.
Here, the district court dismissed for failure to plead sufficient facts to show an “adverse employment action,” which is a judicially-coined term utilized as shorthand for the statutory phrase “compensation, terms, conditions, or privileges of employment.” 42 U.S.C. § 2000e-2(a)(l). As a statutory element of a disparate-treatment claim, an adverse employment action is part of the “ultimate question” in Title VII disparate-treatment claims: “whether a defendant took the adverse employment action against a plaintiff because of [his] protected status.”[6] Therefore, the two essential elements of a disparate-treatment claim are (1) an adverse employment action that (2) occurs as the result of discrimination based on one’s protected status.[7] Regardless of whether the plaintiff proceeds to provide direct or indirect evidence of discrimination, those two elements must be established to maintain a disparate-treatment claim; juries are instructed accordingly,[8] and plaintiffs must plead accordingly.[9] Therefore, although an adverse employment action happens to be a part of the prima facie case under McDonnell Douglas, the district court— because “adverse employment action” is also an essential element of a disparate-treatment claim — did not err in considering whether it was properly pleaded.
II.
Contrary to the majority’s holding, Thompson failed to plead sufficient facts to show an adverse employment action under Fifth Circuit precedent. As noted by the majority, we recognize only “ultimate” em *509 ployment decisions as actionable adverse employment actions for Title VII discrimination claims.[10] Ultimate employment decisions include only hiring, firing, promoting, failing to promote, demoting, granting leave, and compensating.[11] Employment actions such as a purely lateral transfer,[12] reprimands,[13] those that only limit a potential an employee’s opportunity for promotion or lateral transfer,[14] and those that “do[ ] not affect job duties, compensation, or benefits”[15] are not actionable adverse employment actions.
Importantly here, the loss of some job responsibilities is insufficient under this standard.[16] Also key for the disposition of this case, the law of this circuit imposes a “strict” standard,[17] one that has been recognized as the most stringent among our sister courts, with only the Eleventh Circuit having a comparable one.[18]
The majority errs in . holding that Thompson’s alleged loss of job responsibilities meets this exacting standard. By importing the lower “materially adverse” employment-actions standard of our sister circuits, the majority sub silentio overrules our requirement of an ultimate employment action. Essentially, under the majority’s notion, even the restriction of job duties may now be deemed a sufficient employment action where the plaintiff merely alleges that the restrictions are “material.” Although that approach might be appropriate under the law as it has been interpreted by other courts of appeals, it is not the law here, at least not until today.
Although Thompson pleaded that his loss of job responsibilities amounted to an effective demotion, such a conclusional assertion deserves no weight. Instead, we must consider whether the job restrictions as pleaded constitute an ultimate employment action required to state a disparate-treatment claim. Under our standard, the loss of some job responsibilities, without more, is not an ultimate employment action. The distinction may seem formulistic, but its purpose is significant: We do not want to get involved in every dispute between employer and employee. In the end, if the restriction of job responsibilities is egregious enough, the employee can seek redress with a constructive-discharge claim. See McCoy, 492 F.3d at 557-58.
The majority bases its contrary holding on cases from other circuits, our unpublished decision in Schirle v. Sokudo USA, LLC, 484 Fed.Appx. 893 (5th Cir.2012), *510 and our opinion regarding lateral transfers in Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir.2007). I will address each basis for the majority’s theory in turn.
A.
The majority cites decisions of the Sixth, Seventh, and District of Columbia Circuits in support of its conclusion, but none of those utilizes the “ultimate employment action” standard that the law properly requires. Instead, they apply the lower “materially adverse employment action” standard.[19] Instances, under a less exacting standard, in which the restriction on job duties- — viewed by itself — was deemed an adverse employment action lends no persuasive support for the proposition that such restrictions should meet our more demanding standard. Therefore, the decisions of the other courts of appeals are interesting but irrelevant.
B.
In holding that the loss of some job responsibilities may be enough if they affect material responsibilities, the majority also relies on Schirle, which is neither binding precedent (being unpublished), good law, nor persuasive. There the panel, although ostensibly applying our ultimate-employment-action standard, in fact imported the materially-adverse-employment-action standard of Crady v. Liberty National Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir.1993),[20] as referenced in a parenthetical in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).
That might be persuasive if, after Burlington Industries, this circuit had adopted the less exacting standard used in the Seventh Circuit, but the opposite is true: Even after the Supreme Court’s reference to the Seventh Circuit, we reaffirmed our application of the much stricter ultimate employment action standard in McCoy.[21] Because Schirle improperly applied the wrong test, it is irrelevant here.
C.
The majority relies heavily on Alvarado v. Texas Rangers, 492 F.3d 605 (5th Cir. 2007), and the three § 1983 retaliation cases cited therein,[22] in theorizing that employment actions that solely affect job duties can constitute the equivalent of a demotion and, therefore, an ultimate employment decision. In Alvarado, however, the plaintiff claimed that a denial of a transfer to a new position could be considered an ultimate employment action — contrary to the general rule that lateral transfers are not ultimate employment actions — if the transfer would have most accurately been considered a promotion. See Alvarado, 492 F.3d at 611-12. In *511 support of that proposition, the court cited Sharp, Forsyth, and Click, three retaliation cases in which, after considering a number of factors, including the change or loss of job duties, this court had held that a transfer can be the equivalent to a demotion. Alvarado, id. at 612-13.
Unlike the present case, each of the four cases at issue involved a transfer from one position to another. No decision of this court has expanded the application of Alvarado to situations that do not involve transfers. That is important, because such transfers involve more than the restriction of job responsibilities and could, therefore, be considered demotions.
For example, in Click, deputy sheriffs were transferred from the law-enforcement division to a new position as jail guards. See Click, 970 F.2d at 109. Yes, they were still deputy sheriffs, but they now held a different position with different job responsibilities. In Sharp, a police officer was transferred from the horse-mounted division to a teaching post. Yes, the employee was still a police officer, but she was in a new position. See Sharp, 164 F.3d at 923, 933. In Forsyth, two police officers were transferred from the intelligence unit to new positions as night uniformed patrolmen. Yes, they were still police officers, but they now held a new position. See Forsyth, 91 F.3d at 774. Finally, in Alvarado, a female police officer was denied a transfer to the Texas Rangers. Yes, she was still a police officer, but she was denied a transfer to a new position. See Alvarado, 492 F.3d at 609-11.
One could imagine that Thompson could have been transferred to the homicide division, for example. He would have retained his rank as detective but would be working a “new position.” Instead, he has not been denied or forced into any transfer. He does not hold a new position but remains a detective in the drug division. His claim is not of a transfer to a new position that is the equivalent of a demotion; instead, the job duties as a detective in his old position have been restricted.
In essence, Thompson and the majority urge an expansion of Alvarado from (a) a consideration of when transfers can be considered either demotions or promotions to (b) a determination of when any employment action may be properly considered a demotion. In doing so, however, this court would be superseding our precedents holding that employment actions that affect job duties alone — without change in title, compensation, benefits, or position— do not constitute ultimate employment actions.
Alvarado involves a lateral transfer between positions and not, as here, a restriction of job responsibilities. Id. at 613-14. There is no indication in the pleadings that lead investigator or evidence officer is a separate position that has been foreclosed. Instead, these restrictions are represented in the pleadings as merely a loss in job responsibilities with no corresponding change in benefits, compensation, or position. Although it might be accurate to suggest that these restrictions in some way restrict Thompson’s potential future opportunities, this is not enough to constitute an adverse employment action under Fifth Circuit law.[23]
This case is more properly controlled by our precedents regarding the mere loss of job responsibilities,[24] which would require *512 us to hold that these restrictions are not adverse employment actions, so I would affirm the judgment of dismissal. Because the majority, though conscientiously, has decided otherwise, I respectfully dissent.

. See Trans World. Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see also Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir.1995); Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir.1994).

. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817; Haire v. Board of Sup'rs of La. State Univ. Agrie. & Mech. Coll., 719 F.3d 356, 363 (5th Cir.2013).

. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.”); see also Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (“Although Raj does not challenge the district court’s interpretation of his pleading burden, we nonetheless note that a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6)motion to dismiss for failure to state a claim. Inasmuch as the district court required Raj to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an 'evidentiary standard’ for a pleading requirement.” (citations omitted)).

.See Kanida v. Gulf Coast Med. Personnel LP, 363 F.3d 568, 576 (5th Cir.2004) ("This Court has consistently held that district courts should not frame jury instructions based upon the intricacies of McDonnell Douglas burden shifting analysis.”).

. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Swierkiewicz, 534 U.S. at 508, 122 S.Ct. 992).

. Kanida, 363 F.3d at 576 (emphasis added); see also Raj, 714 F.3d at 331. In Swierkiewicz, the complaint was adequate because it pleaded both an adverse employment action ("termination”) and discriminatory intent ("based on national origin”). Swierkiewicz, 534 U.S. at 514, 122 S.Ct. 992.

. See 42 U.S.C. § 2000e-2(a)(1); see also Kanida, 363 F.3d at 576.

. See Kanida, 363 F.3d at 576; see also Fifth Circuit Labor and Employment Law Pattern Jury Charges 13-17 (2009).

. See, e.g., Raj, 714 F.3d at 331 ("Raj's complaint and speculation did not allege any facts, direct or circumstantial, that would suggest LSU’s actions were based on Raj's race or national origin or that LSU treated similarly situated employees of other races or national origin more favorably. Because Raj has failed to raise his right to relief above the speculative level, we affirm the dismissal of Raj's complaint under Rule 12(b)(6) for failure to state a claim.” (citation and internal quotation marks omitted)).

. See McCoy v. City of Shreveport, 492 F.3d 551, 560 (5th Cir.2007) (per curiam); see also Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir.2004); Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir.2003).

. See Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir.2007); Pegram, 361 F.3d at 282; Banks, 320 F.3d at 575; Sharp v. City of Hous., 164 F.3d 923, 933 n. 21 (5th Cir. 1999).

. See Burger v. Cent. Apt. Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999).

. See Sharp, 164 F.3d at 933 n. 21.

. See Banks, 320 F.3d at 575-76.

. Pegram, 361 F.3d at 282.

. See Mota v. Univ. of Tex. Hous. Health Sci. Ctr., 261 F.3d 512, 521 (5th Cir.2001); see also Williams v. U.S. Dep't of Navy, 149 Fed.Appx. 264, 269-70 (5th Cir.2005) (per curiam).

. See Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir.2004).

. See, e.g., Autumn George, Note, “Adverse Employment Action"—How Much Harm Must Be Shown To Sustain a Claim of Discrimination Under Title VII?, 60 Mercer L.Rev. 1075, 1083-87 (2009); see also Michael Rusie, Note, The Meaning of Adverse Employment Actions in the Context of Title VII Retaliation Claims, 9 Wash. U. J.L. & Pol’y 379, 385-89 (2002).

. See Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 594 (6th Cir.2007); Czekalski v. Peters, 475 F.3d 360, 364 (D.C.Cir.2007); Dahm v. Flynn, 60 F.3d 253, 257 n. 2 (7th Cir.1994).

. "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities.” Crady, 993 F.2d at 136.

. McCoy, 492 F.3d at 560 (“Even though our precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII discrimination claims and therefore continues to justify summary judgment dismissal of McCoy's discrimination claims, her retaliation claims require a closer look post-Burlington Northern.”).

. See Sharp v. City of Hous., 164 F.3d 923 (5th Cir.1999); Forsyth v. City of Dall., 91 F.3d 769 (5th Cir.1996); Click v. Copeland, 970 F.2d 106 (5th Cir.1992).

. See Banks, 320 F.3d at 575-76; Burger, 168 F.3d at 878-80.

. See, e.g., Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 532 n. 2 (5th Cir.2003); Mota v. Univ. of Tex. Hous. Health Sci. Ctr., 261 F.3d 512, 521 (5th Cir.2001); Watts v. *512 Kroger Co., 170 F.3d 505, 511-12 (5th Cir.1999).