# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2010

No. 09-30864
Summary Calendar

Charles R. Fulbruge III
Clerk

SHAWN F. COOPER,

Plaintiff - Appellant

v.

UNITED PARCEL SERVICE, INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1583

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Shawn F. Cooper appeals the district court's grant of summary judgment in favor of Defendant–Appellee United Parcel Service, Inc., on his race and disability discrimination claims. Cooper alleges that the Defendant–Appellee failed to make reasonable accommodations for his disability, took adverse employment actions against him on the basis of his race and disability, and retaliated against him in response to his claims of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30864

discrimination. On appeal, Cooper challenges the district court's grant of summary judgment in favor of the Defendant–Appellee on all claims. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cooper, an African–American, worked for United Parcel Service, Inc. (UPS), for approximately seventeen years. Prior to Hurricane Katrina, Cooper lived and worked in the New Orleans, Louisiana, area. Cooper's home was destroyed by the storm and he moved to Baton Rouge, Louisiana, though he continued to commute to New Orleans to work as a "preload supervisor" at the UPS warehouse. Cooper claims that, after his move to Baton Rouge, he requested to be transferred to a UPS facility in Baton Rouge and to be moved to a position in "plant engineering."

Sometime in mid-2006, Cooper claims that UPS asked him and a white employee to use their personal vehicles to deliver packages. Cooper alleges that he and the white employee refused to comply with this request. In August 2006, Cooper was transferred to a UPS center in Harvey, Louisiana, to work as an "on-road supervisor." Cooper complied with the transfer. However, Cooper alleges that the transfer to Harvey added over 25 minutes of additional transit time to each leg of his commute, and he claims that UPS moved him to Harvey because he refused to use his personal vehicle for deliveries. Cooper further claims that this transfer was racially motivated because UPS did not also move the white employee to Harvey or "do anything to him," despite the fact that the white employee also objected to using his personal vehicle for deliveries.

Also in August 2006, Cooper began to suffer from heat exhaustion, muscle spasms, dizziness, and headaches while working. Cooper consulted an occupational doctor, Jimmy Guidry, and was diagnosed with heat stroke, post-traumatic stress disorder, and migraine headaches brought on by heat, depression, and anxiety. Dr. Guidry recommended that Cooper avoid high heat

2

and high-stress situations and that he take a medical leave of absence from his job.  Cooper began his medical leave of absence on August 27, 2006.

While on leave, Cooper continued to receive his salary from August 2006 through March 2007 pursuant to UPS's Income Protection Plan (the "Income Protection Plan" or the "Plan").  Under the Income Protection Plan, eligible employees receive all or a portion of their salary while absent from work because of illness or accidental injury.  However, the Plan also provides that an employee is subject to "administrative separation" if he is absent from work for twelve months.

Cooper also sought treatment from Larry Gooch, a licensed social worker, and Dr. Gregory Ferrara, his primary care physician.  Cooper's medical experts released him to work with restrictions in January 2007.  Specifically, they recommended that Cooper avoid significant daily driving, excessive heat and humidity, and high-stress situations.  In January 2007, Cooper showed up to work and presented his requests for accommodations to UPS.  According to Cooper, UPS denied these requests for accommodations and only offered to place him in jobs that involved performing functions that he was restricted from performing.  Cooper did not resume work at this time, claiming that he could not perform the requirements of his prior position without accommodation.  Cooper then filed a formal request for accommodations.

In February 2007, UPS notified Cooper that it had received his request for accommodations, and it requested supporting information in order to evaluate Cooper's request.  In March 2007, Cooper presented evaluations from Dr. Judith Levy, a clinical psychologist, and Gooch.[1]  Both Dr. Levy and Gooch stated that Cooper was currently unable to perform the duties of his job.  They recommended that Cooper work in a climate-controlled environment;  at a job

---

[1] Cooper also claims to have submitted an evaluation from Dr. Ferrara stating substantially the same information.

closer to his home; in a "new environment" with a new boss; and in a job that would utilize his engineering education. Further, they recommended that Cooper not drive long distances. Both also stated that there were no medications or corrective devices that would allow Cooper to perform all the duties required by his current position. In response, UPS requested official forms from these physicians, which Cooper provided in April 2007.

On September 11, 2007, UPS notified Cooper that he was subject to administrative separation—i.e., termination—under the Income Protection Plan because he had been absent from work for twelve months. The notification letter further states that UPS hoped that Cooper would return to his position, thus avoiding administrative separation under the Plan. Cooper did not return to work and did not submit further medical information regarding his disability.

On August 13, 2008, UPS again notified Cooper that he had been on leave for nearly two years and stated that it had concluded, based on the information Cooper submitted, that he was not disabled and that he must return to work as an on-road supervisor by August 25, 2008, or provide additional requested medical information in support of his disability claims. UPS also informed Cooper that he would be subject to administrative separation if he did not comply. Cooper neither returned to work nor provided further medical information regarding his disability claims. UPS notified Cooper that he had been administratively separated, pursuant to the Plan, on August 27, 2008.

While Cooper was absent from work, he filed an Equal Employment Opportunity Commission (EEOC) charge on May 2, 2007, alleging that he was disabled and that UPS denied him reasonable accommodations. In July 2007, he supplemented this charge with a memorandum to the EEOC in which he also alleged race discrimination. On January 2, 2008, Cooper filed a formal charge of race discrimination with the EEOC. Cooper received his right to sue letter and filed suit against UPS on April 10, 2008. Relevant here, Cooper alleged that

his transfer to Harvey was an adverse employment action that was racially motivated; that UPS discharged him on the basis of his race; that UPS failed to make reasonable accommodations for his disability and later terminated him because of that disability; and that UPS discharged him in retaliation for bringing his discrimination claims. Cooper's race discrimination claims were brought pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981; his disability discrimination claims were brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et. seq.*; and his retaliation claims were brought pursuant to Title VII.[2]

On August 4, 2009, UPS moved for summary judgment. The district court granted the motion on August 19, 2009, concluding that Cooper's transfer to Harvey was not an adverse employment action, that Cooper made no prima facie case of a racially discriminatory discharge, that Cooper could not perform the "essential functions" of his job and thus was not discriminated against on the basis of his alleged disability, and that UPS did not discharge Cooper in retaliation for filing discrimination claims. The district court entered final judgment in favor of UPS on August 20, 2009. Cooper now appeals.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004). Summary judgment is appropriate where the record

---

[2] Cooper also initially brought claims against both UPS and the UPS Flexible Benefits Plan pursuant to ERISA, 29 U.S.C. §§ 1001 *et seq.*, and COBRA, 29 C.F.R. § 2590. Cooper voluntarily dismissed his ERISA and COBRA claims brought against UPS and also voluntarily dismissed all claims brought against the UPS Flexible Benefits Plan on August 14, 2008. Cooper added § 1981 race discrimination claims against UPS in a second amended complaint filed in March 2009. Cooper then filed a second action which more fully alleged race and disability discrimination claims against UPS and the UPS Flexible Benefits Plan in May 2009. These claims against the UPS Flexible Benefits Plan were voluntarily dismissed on June 20, 2009. Both actions were consolidated on June 24, 2009.

shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *accord Pegram*, 361 F.3d at 278. "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (internal quotation marks omitted).

## B.  Race Discrimination Claims

The summary judgment test for race discrimination claims under § 1981 is the same as the test for race discrimination claims under Title VII.  *Id.* Because Cooper does not allege any direct evidence of discrimination, we apply the familiar *McDonnell Douglas* burden-shifting analysis. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination."  *Id.* at 317.  If the plaintiff presents a prima facie case of discrimination, then an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  *Id.*  "If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Id.*

To establish a prima case of discrimination, Cooper must show that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees outside the protected group. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).  However, the requirements for showing a prima

No. 09-30864

facie case are somewhat flexible. *McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable to every respect in differing factual situations.").

Cooper argues that UPS unlawfully discriminated against him on the basis of race both by transferring him to Harvey and by eventually discharging him. UPS disputes that Cooper has established a prima facie case of racial discrimination on either claim. Specifically, as to Cooper's transfer to Harvey, UPS argues that the transfer was not an adverse employment action, and, as to Cooper's discharge, UPS argues both that Cooper failed to show that he was replaced by someone outside his protected class and that he generally failed to put forth any evidence of racial discrimination. We address each claim in turn.

### 1. Cooper's Transfer to Harvey

Regarding Cooper's transfer to Harvey, Cooper asserts solely that the increased commuting time—25 minutes each way—makes the transfer an adverse employment action. We disagree.[3]

"[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). "[A]n employment transfer may qualify as an 'adverse employment action if the change makes the job objectively worse.'" *Id.* at 283 (quoting *Hunt v. Rapides Healthcare Sys., LLC.*, 277 F.3d 757, 770 (5th Cir. 2001). A purely

---

[3] The district court dismissed Cooper's Title VII race discrimination claims concerning his transfer to Harvey as barred because Cooper's EEOC charge addressing those claims was untimely filed. The district court did analyze Cooper's adverse employment action claims under § 1981, noting that the Title VII framework was equivalent. Cooper does not challenge the dismissal of his Title VII race discrimination claims concerning his transfer to Harvey, and accordingly, we do not review the district court's dismissal of those claims. However, we do evaluate, as the district court did, Cooper's § 1981 claims concerning his transfer to Harvey.

lateral transfer is not an adverse employment action; however, a transfer that is the "equivalent of a demotion" is an adverse employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). A transfer can be the equivalent of a demotion where the new position is "'objectively worse—such as being less prestigious or less interesting or providing less room for advancement.'" *Id.* at 613 (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)). "[T]he focus is on the objective qualities of the positions, rather than an employee's subjective preference for one position over another. That subjective preference, alone, is an insufficient basis for finding an adverse employment action." *Hunt*, 277 at 771 n.8.

Cooper's transfer from New Orleans to Harvey was not an adverse employment action. Cooper had the same title and benefits in Harvey as he did in New Orleans. Though a longer commute may have been inconvenient for Cooper, we cannot say that the new position was objectively worse such that it was the equivalent of a demotion. *See Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (per curiam) ("[A]lthough the new job site was 30 or 35 minutes from [Plaintiff's] home, there is no evidence . . . that [the Plaintiff's] new commute was unreasonable." (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (commute time increase from 5–7 to 30–40 minutes did not constitute an adverse employment action)); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (holding that change in employment assignment that, *inter alia*, increased on-the-job commuting time was not an adverse employment action); *see also Gray v. Sears, Roebuck & Co.*, 131 F. Supp. 2d 895, 904 (S.D. Tex. 2001) ("[A]n assignment to a position which has equal compensation, terms, conditions, and privileges of employment—but which requires a longer commute—does not constitute an adverse employment

No. 09-30864

action.").[4] Because Cooper's transfer to Harvey was not an adverse employment action, we conclude that Cooper failed to establish a prima facie case of racial discrimination regarding his transfer to Harvey and thus summary judgment in favor of UPS on that claim was appropriate.

## 2. Cooper's Discharge

Cooper also asserts that UPS terminated him on the basis of his race. However, while Cooper alleged below that he was discharged on the basis of his race, he failed to mention race as a reason he was fired in a subsequent deposition and he failed to point to anyone outside his protected class that either replaced him or was treated more favorably. Though the requirements are flexible, Cooper's unsupported allegations of racial discrimination are insufficient to meet his burden of establishing a prima facie case of racially discriminatory discharge. *Cf. Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc; per curiam) ("Rule 56 *mandates* the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence[.]" (internal quotation marks and citations omitted)). Accordingly, summary judgment in favor of UPS on Cooper's racially discriminatory discharge claim was appropriate.

---

[4] *Cf. Keeton v. Flying J, Inc.*, 429 F.3d 259, 265 n.2 (6th Cir. 2005) (holding that where an employee was transferred to a new job site over 120 miles away, that transfer, while not *per se* an adverse employment action, was an appropriate factor for the jury to consider in determining whether an adverse employment action occurred); *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539–40 (6th Cir. 2002) (holding that a transfer to a worksite 180 miles away from plaintiff's home did not necessarily constitute an adverse employment action while noting that such a transfer could, under some circumstances, constitute an adverse employment action).

No. 09-30864

## *B.  ADA Claims*

Cooper also claims that UPS failed to reasonably accommodate his disability and discharged him because of his disability.  UPS responds that Cooper is not disabled and that, even if Cooper was disabled, he is not a qualified individual with a disability.  The district court concluded that Cooper did not show that he could perform the essential functions of his job and thus dismissed his ADA claims.  We agree.[5]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to [the] . . . advancement, [or] discharge of employees, . . . and other terms conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2005).  "To prevail on an ADA claim, a plaintiff must prove that 1) he has a 'disability'; 2) he is 'qualified' for the job; and 3) an adverse employment decision was made solely because of his disability."  *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1997) (per curiam).  Relevant here, a "disability" is "any physical or mental impairment that substantially limits one or more of [the plaintiff's] major life activities."  42 U.S.C. § 12102(2)(A) (2005).  Major life activities include "working." 29 C.F.R. § 1630.2(i).  A plaintiff is "substantially limited" in working when he is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

---

[5] Cooper was discharged in August 2008.  The ADA was amended in 2008 and these amendments took effect on January 1, 2009.  *See* ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).  We have previously held that these amendments are not retroactive. *See EEOC v. Agro Distrib., LLC.*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) ("Congress recently enacted the ADA Amendments Act . . . , but these changes do not apply retroactively.").  As such, the language and the law cited in this section reference the pre-amendment versions of the ADA.

*Id.* § 1630.2(j)(3)(i).

However, even assuming that one has a disability, to be a qualified individual with a disability the plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2005). Relevant here, reasonable accommodations include "[j]ob restructuring; part-time or modified work schedules; [or] reassignment to a vacant position." 29 C.F.R. § 1630.2(o)(2)(ii). However, "[t]he ADA does not require an employer to relieve an employee of any essential function of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

Here, it is undisputed that the essential functions of Cooper's job include meeting Department of Transportation (DOT) requirements for drivers and working in an environment with variable temperatures and humidity. Cooper does not present any evidence suggesting that he could perform these functions with or without accommodations. Indeed, Cooper's own medical experts, Dr. Levy and Gooch, indicated that Cooper should not work in a variable temperature environment and could not meet DOT requirements. Further, both experts stated that no corrective devices or medications would aid Cooper's condition.

Thus, assuming *arguendo* that Cooper has a "disability," Cooper is not a "qualified individual with a disability" because he cannot perform the essential functions of his job. *Cf. Burch*, 174 F.3d at 621 (firefighter who could not fight fires could not perform essential functions of firefighting job and thus could not be reasonably accommodated as a firefighter as a matter of law); *Guerra v. United Parcel Service, Inc.*, 250 F.3d 739, at *2–3 (5th Cir. 2001) (unpublished table opinion) (employee who could not lift packages of certain weight could not

11

perform essential functions of warehouse job and could not be reasonably accommodated; thus, employee failed to establish a prima facie case of disability discrimination).

However, Cooper argues that UPS could have reassigned him to a position in plant engineering, a position that he claims would have accommodated his disability. "When no reasonable accommodation can be made to the plaintiff's prior job, he may be transferred to another position." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins*, 487 F.3d at 315.

Here, Cooper fails to assert that there are any vacancies in plant engineering, that he was qualified for such a job, or that he even formally applied for such a job. While the record indicates that Cooper did inquire about a plant engineering job, Cooper does not show that such a position was vacant or that he was qualified for that job. "[T]he law requires [a plaintiff] also to prove that he is qualified for [an alternative] position. Part of that proof must be more than the worker's self-serving testimony that he could have performed [the job]." *Burch*, 174 F.3d at 622. Cooper's desire for a job in plant engineering, without accompanying evidence demonstrating his qualifications for that job, is insufficient to sustain his claim that such a job would be a reasonable accommodation. Accordingly, summary judgment in favor of UPS on Cooper's ADA claims was appropriate.

### C.  Retaliatory Discharge Claims

Cooper also alleges that UPS unlawfully retaliated against him by

discharging him in response to his claims of discrimination. "[T]he *McDonnell Douglas* test . . . is also applicable to Title VII unlawful retaliation cases." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Thus, Cooper must first establish a prima facie case of retaliation before the burden of production shifts to UPS to proffer a legitimate, non-retaliatory reason for the adverse employment action. Finally, the burden falls on Cooper to show why UPS's proffered explanation is pretext for unlawful retaliation.

To establish a prima facie case of unlawful retaliation under Title VII, Cooper must show (1) that he engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy*, 492 F.3d at 562 (5th Cir. 2007) (footnotes and internal quotation marks omitted). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id.*

Here, assuming *arguendo* that Cooper has established a prima facie case of retaliatory discharge, Cooper has not met his burden of showing why UPS's proffered explanation—that he was fired after being absent from work for over a year, per the terms of the Income Protection Plan—is pretextual. UPS twice notified Cooper that the Income Protection Plan provides for administrative separation after an employee is absent for over twelve months and requested that Cooper either return to work or provide additional information; Cooper neither returned to work nor provided additional information. Finally, after nearly two years of absence from employment, UPS notified Cooper of his

administrative separation.

Cooper neither disputes that the terms of the Plan provide for his separation nor argues that UPS invidiously enforces the terms of the Plan. Instead, Cooper asserts that the real reason for his termination was UPS's failure to reasonably accommodate his disability. "Whether summary judgment is appropriate . . . depends on numerous factors, including the strength of the employee's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). We conclude that Cooper has not produced sufficient evidence from which a reasonable factfinder could infer that Cooper was discharged as retaliation for filing claims of discrimination. Accordingly, summary judgment in favor of UPS on Cooper's retaliatory discharge claims is appropriate. *Cf. McCoy*, 492 F.3d at 562 (holding that summary judgment was appropriate where plaintiff "attempt[ed] to prove pretext simply by showing that the [defendant] knew of her complaints and took an adverse employment action shortly thereafter" and did not offer reasons as to why the legitimate reasons proffered for her discharge were pretextual).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court. AFFIRMED.

14