Shannon K. LUTMAN, Plaintiff,

v.

John M. McHUGH, Secretary of
the Department of the
Army, Defendant.

No. EP–12–CV–270–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Signed Jan. 13, 2014.

Enrique Lopez, Law Office of Enrique Lopez, El Paso, TX, for Plaintiff.

Lisa Leontiev, U.S. Attorney's Office, El Paso, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant John M. McHugh's "Motion to Dismiss and for Summary Judgment" (ECF No. 23) [hereinafter "Motion"], filed on September 4, 2013; Plaintiff Shannon K. Lutman's "Response to Defendant's Motion to Dismiss and for Summary Judgment" (ECF No. 28) [hereinafter "Response"], filed on October 7, 2013; and Defendant's "Reply in Support of His Motion to Dismiss and for Summary Judgment" (ECF No. 38), filed on November 5, 2013, in the above-captioned cause. The Court granted the Motion on November 22, 2013, and now writes to explain its reasoning.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Complaint

On July 10, 2012, Plaintiff filed her "Complaint" (ECF No. 1) wherein she claims that she (1) was the subject of discrimination because of her gender and (2) was subjected to a hostile work environment while working at the United States Army Sergeant Majors Academy ("USASMA") in Fort Bliss, Texas. Compl. 2–3, July 10, 2012, ECF No. 1.

Plaintiff was hired by USASMA in November 2009.[1] In the summer of 2010, USASMA held a series of meetings to discuss the reorganization of Plaintiff's department. Resp. App. A, at 5. In the fall of 2010, the department was reorganized and Command Sergeant Major ("CSM") Raymond Chandler made a public announcement about the new organizational structure. Compl. 4. Plaintiff claims that her position was the only one affected by the reorganization—she alleges that following the reorganization announcement, she was transferred to the position of Director of Curriculum Development. Resp. App. A, at 6, 17.

Plaintiff identifies these two events, her transfer and the reorganization announcement, as the basis for both her gender-discrimination claim and her hostile-work-environment claim. Plaintiff states that (1) "Defendant removed Plaintiff from her

---

1. The Court has found Plaintiff's exact job title upon her hiring difficult to discern from the record. Parties agree that Plaintiff was hired as a Supervisory Instructional Systems Specialist. Resp. 1; Mot. Summ. J. Ex. A, Ex. 1. However, Plaintiff claims she was "welcomed to USASMA as the Director of Directorate, Training, Doctrine, and Education." Mot. Summ. J. Ex A, at 2; Resp. App. A, at 1. On the other hand, Defendant alleges that Plaintiff was originally hired as Director of Curriculum Development. Mot. Summ. J. Ex. A, Ex. 1, at 1. Because the parties refer to the title of the position inconsistently throughout the pleadings, for the sake of consistency, the Court will hereinafter refer to the position as Director of Training, Doctrine, and Education ("DOTD & E").

duties as Director of Training, Doctrine and Education (DOTD & E) and placed her under the supervision of her former subordinate"; and (2) "Defendant publicly humiliated Plaintiff when the Commandant of the USASMA purportedly announced to the faculty and staff that she would no longer be the Director, DODT & E." Resp. 23.

### B. EEO Complaint

On December 10, 2010, Plaintiff filed a formal complaint with the Equal Employment Opportunity Office [2] ("EEO") as a result of the aforementioned events, and her complaint was assigned to an investigator for formal investigation. Mot. Summ. J. Ex. G, at 2. On March 17, 2012, the Equal Employment Opportunity Commission ("EEOC") issued a decision on record in which they found that (1) Plaintiff's claim was time barred, and (2) USASMA had articulated a legitimate nondiscriminatory reason for its actions," which Plaintiff "failed to demonstrate ... was pretextual and designed to mask discriminatory animus." Mot. Summ. J. Ex. I, at 6. On July 10, 2012, Plaintiff thereupon filed the instant lawsuit. Compl.

## II. LEGAL STANDARD

### A. Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.,* 40 F.3d 698, 712 (5th Cir.1994) (quoting *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990)). If the moving party has satisfied its initial burden, the nonmovant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. 574, 586, 106 S.Ct. 1348 (1986), by "conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994). A court should "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both

---

**2.** Equal Employment Opportunity is a set of federal fair-employment laws that prohibits workplace discrimination by federal employers and requires the government to provide equal employment opportunity to all workers. The laws are overseen by the Equal Employment Opportunity Commission.

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177).

## III. ANALYSIS

### A. Timeliness of Formal Complaint to EEO

The regulations governing administrative processing of federal discrimination complaints dictate that a complainant "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (2013). Failure to initiate contact with the EEO within the required period bars review of the claim in federal court absent waiver, estoppel, or equitable tolling. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir.1992) (citing *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 439–40 (5th Cir.1986)). In Title VII cases, "the limitations period starts running when the plaintiff knows of the discriminatory act." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n. 2 (5th Cir.1992).

In his Motion, Defendant asserts that Plaintiff did not contact the EEO within the forty-five days required by federal regulations. Mot. Summ. J. 7. Rather, Defendant argues that Plaintiff made initial EEO contact fifty-three days after the alleged discriminatory act—the announcement of reorganization. *Id.*

In response thereto, Plaintiff claims that she "does not recall the date but knows the reorganization announcement was not in October but rather in November." Resp. 5. In support thereof, Plaintiff provides a variety of contradictory statements in her Statement of Facts attached to her Response, and her Declaration ("Plaintiff's Declaration"). Resp. P.'s Decl., App. A. First, Plaintiff states: "On November 1, 2010, I was harassed and suffered a hostile work environment when I was publicly humiliated in front of the [USASMA] staff and faculty by CSM Raymond Chandler when he publicly announced that I would no longer be the ... DOTD & E." [3] Resp. P.'s Decl., at 6. However, on the same page of Plaintiff's Declaration, Plaintiff writes: "On or about November 18, 2010, CSM Chandler summoned the entire academy in the auditorium to announce the new reorganization." *Id.*

Moreover, the other statements that Plaintiff provides do not support her allegation that the reorganization announcement occurred in November. For example, after acknowledging that "CSM Chandler approved the restructuring ... in September 2010," Resp. App. A, at 5, Plaintiff states: "It is alleged that on October 18, 2010, CSM Chandler announced the reorganization of USASMA to the staff and faculty. However, Plaintiff believes that this date is simply not accurate knowing CSM Chandler would never wait one month on an action as he was expeditious in the way he conducted business." Resp. App. A., at 8. She also argues that "CSM Chandler would [never] allow 30 days to elapse upon making a decision" in reference to the reorganization announcement. *Id.* at 13. However, while Plaintiff

---

**3.** This passage also appears verbatim in Plaintiff's Statement of Facts in her Response to the Motion. *See* Resp. App. A, at 5. In situations where the language in Plaintiff's Statement of Facts and Plaintiff's Declaration are identical, the Court will cite to only one of these sources.

intends these statements to lend support to her allegation that the announcement occurred in November, they actually weaken her position: her suggestion that an expeditious CSM Chandler would have announced the reorganization shortly after deciding to reorganize the department in September 2010 supports the finding that the reorganization announcement took place earlier rather than later, possibly in October rather than November.

In support of his argument, Defendant provides a declaration made under penalty of perjury" ("Declaration Regarding Date of Reorganization Announcement") signed by Plaintiff on August 4, 2011, during the EEO investigation of her complaint. In the Declaration Regarding Date of Reorganization Announcement, Plaintiff swears to the following statements: "CSM Chandler announced the reorganization of USASMA to the faculty and staff on October 18, 2010; not on November 18, 2010. CSM Chandler's reorganization of USASMA was effective on November 1, 2010." Mot Summ. J Ex. A, Ex 6. Defendant also provides evidence, undisputed by Plaintiff, that Plaintiff's initial contact with the EEO was on December 10, 2010.[4] Mot. Summ. J. Ex. G, at 1. Based on this evidence, a period of fifty-three days elapsed from the alleged discriminatory act and Plaintiff's initial contact with the EEO. Given that the evidence that Plaintiff provides regarding the timing of the announcement of the reorganization consists of her own contradictory statements, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether she initiated contact with the EEO within the required forty-five days.

Federal regulations interpreting Title VII provide for an extension of the forty-five-day period where the Title VII claimant "did not know and reasonably should not have [...] known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2). Additionally, the Fifth Circuit occasionally permits equitable tolling of the forty-five-day period in three circumstances: "(1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir.2003).

However, Plaintiff does not allege, nor does the Court find, that her delay in contact was excused by any of the three circumstances recognized by the Fifth Circuit. Plaintiff has not provided evidence to show that another suit between these parties was pending in the wrong forum or that the EEOC misled her about her rights. *See id.* Additionally, Plaintiff has failed to demonstrate that she lacked awareness of the facts supporting her claim because the Defendant intentionally concealed them; indeed, Plaintiff's claims are based in part on the public announcement of her change in position resulting from the reorganization. *See* Resp. App. A, at 8, 13.

Accordingly, the Court finds that Plaintiff has not raised a fact issue regarding whether her claim is time barred. The Court will nevertheless assess the merits of Plaintiff's gender-discrimination and hostile-work-environment claims.

---

4. The EEO letter to Plaintiff states that the date Plaintiff made initial contact with the EEO was December 10, 2011. Mot. Summ. J. Ex. G, at 1. The Court will assume, based on the other evidence in the record, that the EEO listed the wrong year in error, and will consider the date of Plaintiff's initial contact with the EEO to be December 10, 2010.

## B. Gender Discrimination

■ Under the *McDonnell Douglas* test, a Title VII plaintiff alleging gender discrimination must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was either replaced by someone outside her protected class or treated less favorably than other similarly situated employees outside her class. *See Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013) (citing *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 350 (5th Cir.2008)).

■ Defendant, for purposes of his Motion, stipulates that Plaintiff is female and was "qualified for her position." Mot. Summ. J. 10. Accordingly, the Court will limit its analysis to the third and fourth elements of Plaintiff's prima facie case: whether Plaintiff was subjected to an adverse employment action, and whether Plaintiff was treated less favorably than other similarly situated employees outside her class.

■ "Adverse employment actions include only ultimate employment actions, such as hiring, firing, promoting, compensating, or granting leave." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Admin. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). "[U]nder Title VII principles, an employment transfer may qualify as an 'adverse employment action' if the change makes the job 'objectively worse.'" *Pe-*

*gram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir.2004) (quoting *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 770 (5th Cir.2001)). Courts consider a number of factors in conducting this objective inquiry, including not only "a decrease in pay, title, or grade," but also whether the new position is "less prestigious or less interesting or providing less room for advancement." [5] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir.2007) (quoting *Sharp v. City of Houston*, 164 F.3d 923 (5th Cir.1999)). A plaintiff's subjective belief that a new position is less prestigious, however, is insufficient to show that an adverse employment action has occurred: "[r]ather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused [him] harm." *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir.2001); *accord Hunt*, 277 F.3d at 771 n. 8 ("[T]he focus is on the objective qualities of the positions, rather than an employee's subjective preference for one position over another. That subjective preference, alone, is an insufficient basis for finding an adverse employment action.").

■ Plaintiff alleges that she was subject to two adverse employment actions: (1) her removal from the DOTD & E position and subsequent transfer to Director of Curriculum Development; and (2) the public humiliation caused by CSM Chandler's announcement of the reorganization. Resp. 12. The Fifth Circuit has held that

---

5. For example, in *Click v. Copeland*, 970 F.2d 106 (5th Cir.1992), the Fifth Circuit found that the transfer of two deputy sheriffs from law-enforcement positions to positions as jail guards was a demotion, even though the transfers were not accompanied by a reduction in pay. The plaintiffs in that case presented evidence that "(1) the jail guard positions were less interesting and less prestigious than the law enforcement positions; (2) 'ev-

erybody' viewed a transfer from detention to law enforcement as a promotion and such transfers were rarely appealed, unlike transfers from law enforcement to detention, which few people requested and which were often appealed; and (3) there was a general preference for law enforcement positions, as 'all' jail guards would like to be doing law enforcement work." *Id.* at 109.

"[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating." *Allard v. Holder*, 494 Fed.Appx. 428, 431 (5th Cir.2012) (quoting *McCoy*, 492 F.3d at 559). Accordingly, a public announcement does not constitute an adverse employment action since it is not an "ultimate employment decision." *Id.* Thus, the Court will only assess whether Plaintiff's transfer from her position of DOTD & E to Director of Curriculum Development constitutes an adverse employment action.

Defendant contends that Plaintiff's transfer was not an adverse employment action because Plaintiff's salary actually increased after her transfer. Mot. Summ. J. 12. Plaintiff does not dispute Defendant's allegation in her Statement of Facts; she avers that she "did not receive a reduction in pay" as a result of the reorganization. Resp. App. A, at 13.[6] Moreover, Plaintiff states that she received "more responsibility" following the reorganization.[7] *Id.* However, Plaintiff also alleges that she "suffered an extreme loss of prestige, and formal responsibility when she went from [...] DOTD & E, the fourth highest position in USASMA to a subordinate element of her own previous position and department. She was lowered an echelon in the organizational structure." *Id.* Much like the plaintiff in *Pegram*, who argued that a reassignment to a position where he would play a supporting role to his previous position resulted in a loss of prestige, Plaintiff argues that the transfer resulted in a loss of pres-

tige because she was "put under [her] subordinate." Resp. App. A, at 7. The Fifth Circuit noted in *Pegram* that "[c]ircuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Pegram*, 361 F.3d at 283. Accordingly, the Fifth Circuit held that "Pegram's claim that his reassignment ... was a less prestigious or desirable transfer, without more, would not lift him over the hurdle of summary judgment for the purpose of an adverse employment action." *Id.* Similarly, here, Plaintiff provides no evidence that would allow the Court to objectively determine whether the transfer resulted in a loss of prestige. *See Alvarado*, 492 F.3d at 613–14 ("Whether the new position is worse is an objective inquiry." (citing *Pegram*, 361 F.3d at 283)). Instead, she provides only her own conclusory and self-serving statements that the transfer resulted in a loss of prestige. Resp. App. A, at 13.

Moreover, the Fifth Circuit "has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.'" *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir.2002) (quoting *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996)). Thus, because Plaintiff only provides the Court with her subjec-

---

**6.** When Plaintiff began working at USASMA in November 2009, her yearly salary was $68,417. Mot. Summ. J. Ex. B; *see* Resp. App. A, at 2. Plaintiff's yearly salary increased to $81,823 in May 2010, and Plaintiff states she did not receive a reduction in pay as a result of the reorganization. Resp. App. A, at 13; Mot. Summ. J. Ex. E.

**7.** Plaintiff states that "she received more responsibility as she took on 6 departments with no deputy, no operations SGM [Sergeant Major], and no administrative assistant." Resp. App. A, at 13.

tive perception that the transfer resulted in a loss of prestige, the Court concludes that Plaintiff has not raised a genuine issue of material fact as to whether her transfer was an adverse employment action.[8] Accordingly, the Court concludes that summary judgment on Plaintiff's gender-discrimination claim is proper.

## C. Hostile Work Environment

 To establish a hostile-work-environment claim under Title VII, a plaintiff must demonstrate that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *See, e.g., Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir.2005). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal brackets and quotation marks omitted).

 Plaintiff alleges that she was subjected to a hostile work environment, and her Response cites two incidents of harassment: (1) "Defendant removed Plaintiff from her duties as Director of Training, Doctrine and Education (DOTD & E) and placed her under the supervision of her former subordinate"; and (2) "Defendant publicly humiliated Plaintiff when the Commandant of the USASMA purportedly announced to the faculty and staff that she would no longer be the Director, DODT & E." [9] Resp. 23.

Even if the Court concluded, for purposes of this analysis, that these two inci-

---

8. The Court need not address the fourth element of Plaintiff's prima facie case of gender discrimination, whether Plaintiff was either replaced by someone outside her protected class or treated less favorably than other similarly situated employees outside her class, due to the Court's determination of the third element of her prima facie case.

9. Plaintiff's Declaration discusses several other incidents that she does not use to support her hostile-work-environment argument. These include a male employee "looking [Plaintiff] up and down in more than a friendly way" and another employee asking CSM Rosen "if he had just got out of bed with [Plaintiff], as they both looked like they had been rolling around." Resp. P.'s Decl., at 8. However, the Supreme Court has held that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations omitted). Moreover, the Fifth Circuit has repeatedly noted that the time frame in which incidents occur is relevant to a hostile-work-environment analysis. For example, the court has noted that longer time periods can "dilut[e] [the] pervasive characteristic" of sexually suggestive comments, while offensive conduct that is "compacted into" shorter time periods is more likely to be seen as "pervasive." *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 403 (5th Cir.2013) (citing *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.,* 168 F.3d 871, 874 (5th Cir.1999), *cert. denied,* 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999); *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 328 (5th Cir.2004)). Here, Plaintiff alleges that several incidents occurred over the course of three years in an apparent effort to convince the Court that the litany of unrelated individual incidents can lend support to her hostile-work-environment claim. The Court finds that, even were Plaintiff to use this evidence to support her claim of hostile work environment, the aforementioned incidents are insufficient to support a claim of hostile work environment.

dents are "unwelcome harassment," it is incumbent upon Plaintiff to prove that the harassment was based upon her protected characteristic. However, Plaintiff does not allege nor provide evidence that the two events were based on her membership in a protected class. The Fifth Circuit has held that summary judgment is proper in this circumstance. *See McGarry v. Univ. of Miss. Med. Ctr.*, 355 Fed.Appx. 853, 858 (5th Cir.2009) (upholding summary judgment when the plaintiff in the case "fail[ed] to demonstrate ... that she presented any evidence at summary judgment indicating that the investigation and transfer were connected in any way to her membership in a protected class").

In her Statement of Facts, Plaintiff states that she "was treated with discrimination because she is female" and that "no one else was impacted in this manner [by the reorganization] and Plaintiff emphatically believes it was due to sex." Resp. App. A, at 6, 17. However, it is well established that Plaintiff's own statements are not enough to satisfy her burden in a motion for summary judgment. *See Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir.2002) ("This Court has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the non-movant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996))); *see also Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir.2001) ("This court has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief.").

Because Plaintiff does not provide evidence other than her own conclusory allegations to support her claim that the adverse events were due to her gender, the Court concludes that summary judgment on Plaintiff's hostile-work-environment claim is appropriate.

## IV. CONCLUSION

The Court has determined that Plaintiff failed to contact the EEO within forty-five days as required by 29 C.F.R. § 1614.105(a)(1); thus, the Court is barred from reviewing her claim. The Court will therefore grant Defendant's Motion.

Even if the Court were to address the merits of Plaintiff's case, the Court additionally finds that Plaintiff does not raise a genuine issue of material fact regarding whether she was subjected to unlawful discrimination based on her gender or subjected to a hostile work environment.

Accordingly, **IT IS ORDERED** that Defendant's "Motion to Dismiss and for Summary Judgment" (ECF No. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Shannon K. Lutman's claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this case.